IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| LASONIA CARLISLE, *et al.*, | ) |
| Plaintiffs/Relators, | ) ) ) |
| v. | ) CIVIL ACT. NO. 3:15cv565-CDL ) (WO) |
| DAEWON KANGUP CO., LTD., *et al.*, | ) ) |
| Defendants. | ) |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**INTRODUCTION**

In this *qui tam* action, the plaintiffs-relators seek to recover damages under the False Claims Act, 31 U.S.C. §3729 *et seq.*, alleging that the defendants conspired to submit false claims to the government. In their amended complaint filed on May 17, 2016, plaintiffs-relators Lasonia Carlisle ("Carlisle") and Jimmy Arwood ("Arwood") accuse the corporate defendants, Daewon Kangup Co., Ltd. ("Daewon Kangup") and Daewon America, Inc. ("Daewon America"), and individual defendants, Andrew Dooho Hur ("Hur") and Won Kwon ("Kwon"), quality control managers for Daewon America, of making false statements and false claims related to defective automobile parts manufactured at Daewon America's Opelika, Alabama plant. (Doc. # 11). The United States declined to intervene in this action as a matter of right. *See* Doc. # 12.

The court has jurisdiction of the plaintiffs-relators' claims pursuant to its federal subject matter jurisdiction, 28 U.S.C. § 1331, and supplemental jurisdiction of the state law

claims pursuant to 28 U.S.C. § 1367.

On June 12, 2017, the defendants filed a motion to dismiss for failure to state a claim pursuant to FED.R.CIV.P. 12(b)(6).[1] (Doc. # 36). After careful consideration of the motion to dismiss, and the briefs filed in support of and in opposition to the motion, the court concludes the motion to dismiss should be granted.

### STANDARD OF REVIEW

In ruling on a motion to dismiss for failure to state a claim upon which relief can be granted, the court must accept well-pled facts as true, but the court is not required to accept a plaintiff's legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009) ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). In evaluating the sufficiency of a plaintiff's pleadings, the court must indulge reasonable inferences in plaintiff's favor, "but we are not required to draw plaintiff's inference." *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1248 (11th Cir. 2005). Similarly, "unwarranted deductions of fact" in a complaint are not admitted as true for the purpose of testing the sufficiency of plaintiff's allegations. *Id.. See also Iqbal*, 556 U.S. at 681 (stating conclusory allegations are "not entitled to be assumed true").

A complaint may be dismissed if the facts as pled do not state a claim for relief that is plausible on its face. *See Iqbal*, 556 U.S. at 679 (explaining "only a complaint that states a plausible claim for relief survives a motion to dismiss"); *Bell Atl. Corp. v. Twombly*, 550

---

[1] Also pending is a motion to dismiss for lack of personal jurisdiction filed by defedant Daewon Kungup. The court will resolve that motion to dismiss in a separate Report and Recommendation.

U.S. 544, 561-62 (2007) (retiring the prior "unless it appears beyond doubt that the plaintiff can prove no set of facts" standard). In *Twombly*, the Supreme Court emphasized that a complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." 550 U.S. at 555. Factual allegations in a complaint need not be detailed but "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (internal citations and emphasis omitted). In *Iqbal*, the Supreme Court reiterated that although FED.R.CIV.P. 8 does not require detailed factual allegations, it does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." 556 U.S. at 678. The well-pled allegations must nudge the claim "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

## DISCUSSION

In this False Claims Act case, the plaintiffs-relators' claims center around actions taken at Daewon America's plant in Opelika, Alabama.

> The False Claims Act ("the Act") permits private persons to file a form of civil action (known as *qui tam*) against, and recover damages on behalf of the United States from any person who: (1) knowingly presents, or causes to be presented, to an officer of employee of the United States Government or a member of the Armed Forces of the United States Government or a member of the Armed Forces of the United States a false or fraudulent claim for payment or approval; (2) knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government. 31 U.S.C. § 3729(a)(1)-(2)

*United States ex rel. Clausen v. Laboratory Corp. of Am., Inc.*, 290 F.3d 1301, 1307 (11th

Cir. 2002) (footnotes omitted).

Moreover, "complaints alleging violations of the False Claims Act are governed by Rule 9(b)." *Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1012 (11th Cir. 2005); *United States v. HPC Healthcare, Inc.*, — F. App'x —, —, 2018 WL 526039, *3 (11th Cir. Jan. 24, 2018) ("the complaint must satisfy Rule 9(b)'s heightened pleading requirement for claims alleging fraud.")

> To state a claim under the False Claims Act with particularity, the complaint must allege "'facts as to time, place, and substance of the defendant's alleged fraud,' [and] 'the details of the defendants' allegedly fraudulent acts, when they occurred, and who engaged in them.'" *Clausen*, 290 F.3d at 1310 (quoting *Cooper v. Blue Cross & Blue Shield of Fla., Inc.* 19 F.3d 562, 567-68 (11th Cir. 1994)). Failure to satisfy Rule 9(b) is a ground for dismissal of a complaint.

*Corsello*, 428 F.3d at 1012.

Finally, "[b]ecause it is the submission of a fraudulent claim that gives rise under the False Claims Act, that submission must be pleaded with particularity and not inferred from the circumstances." *Id*. *See also*, *HPC Healthcare*, 2018 WL 526039 at *3.

> To establish a cause of action under § 3729(a)(1)(A), a relator must prove three elements: (1) a false or fraudulent claim, (2) which was presented, or caused to be presented for payment or approval, (3) with knowledge that the claim was false. 31 U.S.C. § 3729(a)(1)(A). To prove a claim under §3729(a)(1)(B), a relator must show that: (1) the defendant made (or caused to be made) a false statement, (2) the defendant knew it to be false, and (3) the statement was material to a false claim. 31 U.S.C. § 3729(a)(1)(B).

*United States ex rel. Phalp v. Lincare Holdings, Inc.*, 857 F.3d 1148, 1154 (11th Cir.2017).

The plaintiffs-relators conflate their presentation and certification claims by asserting that, pursuant to 31 U.S.C. § 3729(a)(1), the defendants "knowingly made or caused to be made or used false statements and certifications in order to get false or fraudulent claims paid or approved by the federal and state governments." (Doc. # 11 at 23, ¶ 68). Specifically, the plaintiffs-relators allege that the defendants "sold defective automotive parts to automakers *who in turn sold said defective automotive parts, that fail to meet manufacturer specifications*, to the federal and state governments." (*Id*. at 23-24, ¶ 70) (emphasis added) Finally, the plaintiffs-relators allege that the defendants sold defective automobile parts to General Motors when the United States operated that corporation. (*Id*. at 24, ¶ 71).

In the amended complaint, the plaintiffs-relators assert that the defendants disregarded test results indicating that a particular automobile part was defective, and then sold those defective parts to automobile manufacturers. The automobile manufacturers then placed the defective parts in automobiles that are "commonly used by federal and state agencies." (Doc. # 11 at 14, ¶¶ 37-39). In describing this scheme, the plaintiffs-relators allege that relator Carlisle subjected parts for ferrite or decarb testing. If the test revealed the part had "ferrite or decarb beyond the allowed parameters on the specification sheet, then that part was not to leave the facility and was to be rejected." (*Id*. at 8, ¶ 19). According to the plaintiffs-relators, the defendants entered fraudulent test results into the plant's systems to "make it appear that the defective parts had passed inspection." (*Id*. at 9, ¶ 21). Thereafter, the defendants manipulated testing data to mislead auditors, and to "make it appear that the

5

auto parts are within specifications, when they in fact are not." (*Id*. at 9-10, ¶¶ 25, 28). According to the plaintiff-relators, the defendants then allowed defective parts to leave the plant and be sold to automobile manufacturers. (*Id*. at 12-14, ¶ 36-37). The plaintiffs-relators allege that the defective parts were then incorporated into various automobiles and those automobiles that were "then sold to the federal and state government." (*Id*. at 14, ¶ 39). Furthermore, the plaintiffs-relators allege that "the federal government, as the owner of General Motors ("New GM") from on or about July 10, 2009 through on or about December 9, 2013, directly purchased defective stabilizer bars and coil springs from [the defendants]." (*Id*. at 16, ¶ 41).

The crux of the plaintiffs-relators' allegations is that by selling defective automobile parts to automobile manufacturers who then sold automobiles allegedly containing those parts to the federal government, the defendants submitted or caused to be submitted false or fraudulent claims to the federal government when the federal government paid for those automobiles. (*Id*. at 23-24, ¶ 70). The plaintiffs-relators also allege that because the defendants sold defective parts "to General Motors when the United States owned and operated General Motors," when the defendants sought payment for those parts, they submitted or caused to be submitted false claims to the federal government. (*Id*.) In essence, the plaintiffs-relators allege that the defendants submitted or caused to be submitted false claims to the government when the government bought automobiles that contained defective parts.

While the plaintiffs-relators describe the scheme in detail, the complaint wholly lacks any specificity about actual submission of claims to the government. *See Clausen*, 290 F.3d at 1311. The amended complaint does not identify any specific claims presented to the government for payment, nor does it identify any dates on which the federal government purchased vehicles or specific parts for General Motors. The plaintiffs-relators rely on conclusory statements and allegations that are simply insufficient to survive a motion to dismiss. The plaintiffs-relators must allege specific facts to support their conclusions; they cannot rely on conjecture or inference. *See Jallali v. Sun Healthcare Group*, 667 F. App'x 745, 745-746 (11th Cir. 2016). "Because the submission of an actual claim to the government for payment is "the *sine qua non*" of an FCA violation, a plaintiff-relator must "plead the submission of a false claim with particularity." *United States ex rel. Mastej v. Health Mgmt. Assoc., Inc.*, 861 F. App'x 693, 703 (11th Cir. 2014) (internal citation omitted).

The plaintiffs-relators must do more than simply assert that the allegedly defective automobile parts must have been included in vehicles the federal government purchased from automobile manufacturers. The plaintiffs-relators make no allegation that the automobile manufacturers knew that the parts purchased from the defendants were defective, or that the automobile manufactures knowingly placed defective parts in vehicles that were eventually sold to federal agencies. Although the plaintiffs-relators describe in detail the manufacturing of automobile parts at the defendant's Opelika plant, without more, their False Claims Act claims fail. "It is the *submission and payment* of a *false* [] *claim* and false certification of

7

compliance with the law that creates FCA liability." *Mastej*, 591 F. App'x at 705 (emphasis in original). The plaintiffs-relators allege no facts that link the alleged actions of the defendants' manufacturing defective parts to the government's decisions to purchase vehicles. *See Hopper v. Solvay Pharmaceuticals, Inc.*, 588 F.3d 1318, 1330 (11th Cir. 2009).

> If a . . . defendant makes a false statement to a private entity and does not intend the Government to rely on that false statement as a condition of payment, the statement is not made with the purpose of inducing payment of a false claim "by the Government." In such a situation, the direct link between the false statement and the Government's decision to pay or approve a false claim is too attenuated to establish liability.

*Hopper*, 588 F.3d at 1330 quoting *Allison Engine Co. v. United States ex rel. Sanders*, 553 U.S. 662, 671-72.

Because the plaintiffs-relators have failed to allege specific facts that connect the defendants' actions to the government's decisions to purchase particular vehicles, the court concludes that the plaintiffs-relators' claims are due to be dismissed for failure to comply with FED.R.CIV.P. 9(b).

To the extent that the plaintiffs-relators argue that the defendants are liable pursuant to an implied false certification theory, they have failed to plead with sufficient specificity to survive the defendants' motion to dismiss. The plaintiffs-relators, allege that the defendants, by conspiring to falsify testing, and falsely certifying to federal and state governments that their parts met all safety regulations, the defendants "knowingly present[ed] or caused to be presented false or fraudulent claims for payment or approval." (*Id*. at 22, ¶ 66). These allegations are simply insufficient as a matter of law to withstand the defendants'

8

motion to dismiss.

> [I]n certain circumstances, the implied false certification theory can be a basis for liability. Specifically, liability can attach when the defendant submits a claim for payment that makes specific representations about the goods or services provided, but knowingly fails to disclose the defendant's noncompliance with a statutory, regulatory, or contractual requirement. In these circumstances, liability may attach if the omission renders those representations misleading. . . . What matters is not the label the Government attaches to a requirement, but whether the defendant knowingly violated a requirement that the defendant knows is material to the Government's payment.

*Universal Health Servs., Inc. v. United States ex rel. Escobar*, — U.S. —, —,136 S.Ct. 1989, 1995-96 (2016). The plaintiffs-relators do not identify any specific vehicle that was actually purchased by the government or manufactured by General Motors that contains allegedly defective parts manufactured by the defendants. The general conclusory allegations require the court to infer or speculate that perhaps some vehicles contained a part that was falsely certified as meeting safety regulations. Nor do the plaintiffs-relators assert that any violation of a particular safety standards was material to the government's purchasing decisions.

> The materiality standard is demanding. The False Claims Act is not "an all-purpose fraud statute," *Allison Engine*, 553 U.S. at 672, 128 S.Ct. 2123 or a vehicle for punishing garden-variety breaches of contract or regulatory violations. A misrepresentation cannot be deemed material merely because the Government designates compliance with a particular statutory, regulatory, or contractual requirement as a condition of payment. Nor is it sufficient for a finding of materiality that the Government would have the option to decline to pay if it knew of the defendant's noncompliance.

*Universal Health Servs.*, — U.S. at —, 136 S.Ct. at 2003.

The plaintiffs-relators' allegations are conclusory and self-serving without providing

9

a factual basis to support their claims. Although the plaintiffs-relators attached to their complaint 60 pages of fleet registrations that list the number, make and model of vehicles owned by the federal government, they present no facts that any specific vehicle contains a part that was falsely represented to be compliant with government safety standards. In a footnote, the plaintiffs-relators assert that lists of vehicles registered to the government attached to their complaint is "further proof herein that the Government has purchased vehicles which Daewon supplied with defective stabilizer bars and coil springs." (Doc. # 11 at 23, n. 5). The registration lists do not identify specific vehicles by VIN numbers; do not identify which governments or agencies own the vehicles; and do not in any way indicate vehicles that have been identified as having defective parts. At its core, the plaintiffs-relators' basic assumption is that because the defendants manufactured defective parts and sold those defective parts to automobile manufactures, the court can infer that some vehicles purchased by the government contain defective parts. The law is clear that the court cannot make that speculative, inferential leap.

> Although we construe all facts in favor of the plaintiff when reviewing a motion to dismiss, we decline to make inferences about the submission of fraudulent claims because such an assumption would "strip[] all meaning from Rule 9(b)'s requirements of specificity. *Clausen*, 290 F.3d at 1312 n. 21.

*See Corsello*, 428 F.3d at 1013. *See also Britton ex rel. United States v. Lincare Inc*., 634 F. App'x 238. 241 (11th Cir. 2015) ("absent facts demonstrating actual submission of false claims, this kind of speculation is insufficient to satisfy the pleading standard set by Rule 9(b)."). The plaintiffs-relators offer no specific *facts* demonstrating either that the

10

government purchased specific vehicles containing defective parts or that the government would not have purchased specific vehicles had it known that certain vehicles contained allegedly defective parts. The plaintiffs-relators make the unwarranted assumption that the government must own vehicles with defective parts, but they fail to provide any factual basis identifying particular vehicles owned by the government that contains allegedly defective parts. This deficiency is fatal to their claims.

For the same reasons, the plaintiffs-relators' conspiracy claim also fails.[2] The plaintiffs-relators allege that "[a]t all times material to this Complaint the Daewon defendants conspired to violate the False Claims Act and the National Traffic and Motor Vehicle Safety Act. (Doc. # 11 at 7, ¶ 14). "To state a claim of conspiracy to violate the False Claims Act, the plaintiff must allege (1) an unlawful agreement between the defendants to commit a violation of § 3729(a)(1); (2) an act performed in furtherance of the conspiracy; and (3) that the United States suffered damages as a result. Rule 9(b)'s heightened pleading standard applies to claims brought under the conspiracy provision." *HPC Healthcare*, 2018 WL 526039 at *4 (internal citations omitted). *See also Corsello*, 428 F.3d at 1014. The plaintiffs-relators' bare allegations that the defendants "knowingly conspired" are insufficient to establish that the defendants conspired to get the Government to pay a false claim. Construing the facts in the light most favorable to the plaintiffs-relators, at best the facts as

---

[2] The defendants raise as a defense the intra-corporate conspiracy doctrine. *See* Doc. # 37 at 28-30. The court pretermits discussion of the applicability of this defense because the court concludes that the plaintiffs-relators have failed to allege a conspiracy claim with sufficient specificity.

alleged may demonstrate that the defendants conspired to get automobile manufacturers to purchase defective parts, but the amended complaint contains no specific facts that assert that the defendants agreed to cause false claims to be submitted to the government. The facts as alleged are simply too attenuated to support a conspiracy claim.

### State Law Claims

The court's exercise of supplemental jurisdiction over the plaintiffs-relators' remaining state law claims is discretionary. Under 28 U.S.C. § 1367(c)(3), the court may "decline to exercise supplemental jurisdiction over a [state law] claim if the district court has dismissed all claims over which it has original jurisdiction . . . " The court declines to exercise supplemental jurisdiction over the plaintiffs-relators' state law claims, and these claims are due to be dismissed without prejudice.

### IV. CONCLUSION

Accordingly, for the reasons as stated, it is the RECOMMENDATION of the Magistrate Judge as follows:

1. that, with respect to the plaintiffs-relators' False Claims Act claims, the defendants' motion to dismiss (doc. # 36) be GRANTED for failing to comply with FED.R.CIV.P. 9(b) and those claims be dismissed with prejudice.

2. that, with respect to the plaintiffs-relators' state law claims, those claims be dismissed without prejudice.

3. that this case be dismissed.

It is further

ORDERED that the parties shall file any objections to this Recommendation on or before **April 12, 2018.** A party must specifically identify the factual findings and legal conclusions in the Recommendation to which objection is made; frivolous, conclusive, or general objections will not be considered. Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with the provisions of 28 U.S.C. § 636(b)(1) shall bar a party from a de novo determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of the party to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); 11TH CIR. R. 3-1. *See Stein v. Lanning Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc).

Done this 29th day of March, 2018.

                                                     /s/Charles S. Coody
                                                     CHARLES S. COODY
                                                     UNITED STATES MAGISTRATE JUDGE